893 P.2d 482

**SANDOVAL COUNTY BOARD OF COMMISSIONERS, Plaintiff,**

v.

**Ben RUIZ and Margaret Ruiz, his wife, Defendants–Appellees,**

v.

**The VILLAGE OF CORRALES, a Municipal Corporation, Plaintiff-in-Intervention–Appellant.**

**No. 15341.**

Court of Appeals of New Mexico.

Feb. 27, 1995.

David Mathews, Mathews & Davis, P.A., Rio Rancho, for plaintiff-in-intervention-appellant.

George H. Perez, Bernalillo, for defendants-appellees.

Eddie Gallegos, Bernalillo, for plaintiff.

## OPINION

DONNELLY, Judge.

Plaintiff-in-Intervention, the Village of Corrales (the Village), appeals from a judgment of the trial court which held that the mobile home park development of Defendants, Ben and Margaret Ruiz, is not subject to the Village's zoning and planning and subdivision requirements. The central issue presented on appeal is whether the development proposed by Defendants must comply with the Village's subdivision and zoning ordinances. We reverse.

## FACTS

The property, which is the focus of the dispute herein, is a forty-seven-acre tract of land purchased by Defendants in 1987. At the time of its acquisition by Defendants, the property was located in Sandoval County (the County), outside the municipal boundaries of the Village. The tract, however, was situated within a three-mile area adjacent to the Village boundaries, and was within the concurrent planning and platting jurisdictions of both the County and the Village. No county zoning ordinances applied to the property when it was first obtained by Defendants. There was, however, a county ordinance regulating the development of subdivisions, which required county approval of subdivisions.

On May 23, 1988, Defendants obtained the approval of the New Mexico Environmental Improvement Division (EID) to install a waste water treatment system to serve 128 mobile homes in their proposed development. The EID permit allowed Defendants to place a minimum of three mobile home units per acre on the property. Defendants subsequently modified the plans for the proposed development to provide for 251 mobile home sites. In June 1988 Defendants commenced construction of the mobile home park, including the blading of roads, the performance of soil tests, and other site work. The record also reflects that Defendants spent in excess of $50,000 on these development costs.

On June 7, 1988, county officials notified Defendants that the mobile home park that they were in the process of constructing was a "subdivision" within the purview of the County's existing subdivision ordinances, and that the mobile home park required the formal approval of the County. On June 14, 1988, Defendants responded to this notice and advised the County that they believed they were not required to obtain the County's approval for the project because the proposed mobile home development did *not* constitute a subdivision within the meaning of the County's ordinance. Thereafter, the County filed an action against Defendants seeking a declaratory judgment to determine whether Defendants' proposed mobile home development constituted a "subdivision" within the meaning of the County's subdivision ordinances and the New Mexico Subdivision Act. *See* NMSA 1978, §§ 47–6–1 to –29 (Repl.Pamp.1982).

On April 15, 1989, and during the pendency of the declaratory judgment action, the Village annexed Defendants' property. The

Village then notified Defendants by letter that the proposed development violated the "one single family dwelling unit per acre" restriction contained in the Village's zoning ordinance. Later the same year, the Village enacted a new comprehensive zoning ordinance that further restricted the type of development undertaken by Defendants.

On July 21, 1989, the Village filed a motion to intervene in the declaratory judgment action, alleging: (1) that Defendants were required to obtain approval from the Village's subdivision authority for development of the proposed mobile home park; and (2) the proposed development violated the Village's zoning ordinance limiting development of property in the area in question to a density not exceeding one single family dwelling unit per acre. Following a trial on the merits, the trial court adopted findings of fact and conclusions of law and entered a judgment in favor of Defendants.

In reaching its decision, the trial court concluded, among other things, that the mobile home park development did constitute a "subdivision" within the meaning of the County's ordinances, but that the issues regarding the County were moot once the Village annexed the property at issue; that the mobile home park development did not constitute a "subdivision" within the meaning of the Village's ordinances; that Defendants were not required to submit an application for development of a subdivision to the Village; that the Village's zoning ordinances did not apply to Defendants' property because Defendants' property was unzoned at the time of its annexation; that the Village did not give proper notice to Defendants at the time it adopted its zoning ordinances; and that because Defendants had acquired a vested right to develop such property prior to its annexation by the Village, Defendants were not subject to the Village's subdivision and zoning ordinances.

*DISCUSSION*

■ The County's subdivision ordinance substantially follows the definition of "subdivision" as set forth in the New Mexico Subdivision Act. *See* §§ 47–6–1 to –29. Section 47–6–2(I) of the New Mexico Subdivision Act defines a "subdivision" as "an area of land within New Mexico, the surface of which has been divided by a subdivider into five or more parcels within three years for the purpose of *sale or lease*." (Emphasis added.) The statute excludes from the definition of a subdivision, "the sale or lease of apartments, offices, stores or similar space within a building." Section 47–6–2(I)(2).

Similarly, the Village's subdivision ordinance, although omitting any reference to land subject to lease, otherwise substantially follows the state statute and the County's ordinances defining "subdivisions." NMSA 1978, Section 3–20–1(A), (B) (Repl.1985), sets forth, in pertinent part, that " '[s]ubdivide' or 'subdivision' for the purpose of approval by a municipal planning authority means ... [t]he division of land ... for the purpose of: (1) sale for building purposes; (2) laying out a municipality or any part thereof; (3) adding to a municipality; (4) laying out suburban lots; or (5) resubdivision."

Defendants argue that their proposed development does not constitute a "subdivision" within the meaning of the County's or the Village's ordinances. Defendants also contend that the Village's subdivision ordinance, unlike the County's ordinance, does not apply to tracts of land developed for "lease." Defendants further argue that a mobile home park is similar to an apartment complex, not a subdivision.

The question of whether development of a mobile home park or trailer park constitutes a "subdivision" within the meaning of the state, county, or municipal land use laws has not previously been addressed by the appellate courts of this state. In response to the arguments of Defendants, however, the Village relies, in part, upon New Mexico Attorney General Opinion 76–9 (1976) which held that the construction and rental of trailer spaces falls within the definition of a "subdivision" under both county and municipal subdivision regulations. The opinion reasoned that the determinative factor for resolving the question as to whether a tract of land sought to be developed as a mobile home park is subject to county or municipal subdivision ordinances is not whether the lots are to be *leased* or *sold;* rather, the answer lies in ascertaining the overall intent and purpose

of such legislation. The opinion found that the intent of the subdivision law was to provide a means for insuring the harmonious development of a municipality and its environs in order to coordinate proposed developments with existing municipal plans. *Id.*

In considering a similar issue, the Texas Court of Appeals concluded that a mobile home park falls within the definition of the term "subdivision," regardless of whether the intent of the developer is to "sell" or "lease" individual mobile home sites. *See, e.g., City of Weslaco v. Carpenter,* 694 S.W.2d 601, 603 (Tex.Ct.App.1985) (a mobile home development is a "subdivision," regardless of whether an actual transfer of ownership occurs); *see also Cowboy Country Estates v. Ellis County,* 692 S.W.2d 882, 886 (Tex.Ct.App. 1985) (a mobile home park is a subdivision even though the owner has no intention of selling lots, but instead intends only to lease lots).

We agree with the rationale of the court in *City of Weslaco* and the interpretation of our Attorney General in Opinion 76–9, and hold that Defendants' mobile home park project is a "subdivision" as contemplated by the County's planning and platting ordinance, Section 47–6–2(I) of the New Mexico Subdivision Act, and the Village's subdivision ordinances. A different interpretation, we believe, is contrary to the plain meaning of the statute and ordinances and nullifies the basic purpose of such laws. *See Lopez v. Ski Apache Resort,* 114 N.M. 202, 208, 836 P.2d 648, 654 (Ct. App.) (in interpreting statute, court looks to purposes and intent of legislature), *cert. denied,* 113 N.M. 815, 833 P.2d 1181 (1992); *Matthews v. State,* 113 N.M. 291, 296, 825 P.2d 224, 229 (Ct.App.1991) (in ascertaining legislative intent, court looks not only to language used, but also to objects sought to be achieved). Reading the ordinances as a whole, it is clear that the underlying purposes of both the County's ordinance and the Village's ordinances are to ensure that subdivisions are carefully planned, commensurate with the health, safety, and general welfare of the occupants and landowners of the affected area. *See generally* § 47–6–9(A)(1)– (11). Further, we do not believe that a mobile home park is analogous to an apartment complex; a mobile home park involves the division of land, as opposed to the division of individual units within a building. The ordinances here each place restrictions on the *division* of land. *See City of Weslaco,* 694 S.W.2d at 603.

Thus, prior to beginning construction of their mobile home park, Defendants must seek and obtain approval of both the County and the Village for the proposed subdivision. According to the Sandoval County Subdivision Ordinance, approval by the county commission of the plats of proposed developments located in the county is required if the proposed development constitutes a subdivision, and according to the Village's Land Subdivision Regulations, approval of the plats by various village authorities is required if the proposed developments constitute a subdivision. *See also* NMSA 1978, § 3–20–9 (Repl.1985) (individuals "seeking the approval of a plat of a subdivision within the platting jurisdiction of both a county and municipality [are required to secure] approval from both the board of county commissioners and the planning authority of the municipality").

We next consider the effect of Defendants' failure to apply for permission from both the County and the Village before commencing construction of the mobile home park. Defendants argue that the trial court properly concluded that the Village's land use ordinances were not applicable to their proposed development because they established a vested use in the property as a mobile home park prior to the Village's April 15, 1989, annexation of the property. We find this argument unpersuasive. In order to establish a vested use so as to exempt property from the necessity of complying with applicable land use regulations, as a general rule, a party asserting a prior vested right must establish two factors: (1) issuance of written approval to the applicant for the proposed subdivision or construction project; and (2) a substantial change in position by the applicant in reliance upon such approval. *See Brazos Land, Inc. v. Board of County Comm'rs of Rio Arriba County,* 115 N.M. 168, 170, 848 P.2d 1095, 1097 (Ct.App.1993); *see also In re Sundance Mountain Ranches,*

*Inc.*, 107 N.M. 192, 194, 754 P.2d 1211, 1213 (Ct.App.) (generally, written approval for a proposed subdivision, together with a substantial change in reliance thereon, are required before vested rights accrue), *cert. denied*, 107 N.M. 267, 755 P.2d 605 (1988).

◼ In the present case, it is undisputed that Defendants failed to apply to either the County or the Village for initial approval of the proposed development. *See, e.g.*, NMSA 1978, § 3–19–5(A)(2) (Repl.1985) (municipality shall have planning and platting jurisdiction of territory within three miles of its boundary); NMSA 1978, § 3–20–5(C) (Repl. 1985) ("The county and a municipality shall exercise concurrent jurisdiction over territory within the platting jurisdiction of both the county and the municipality."); *see also* § 3–20–9. Because Defendants' mobile home park development constituted a subdivision within the meaning of the ordinances of both the County and the Village, because the subject property was located in the planning and platting jurisdiction of both the County and the Village, and because Defendants failed to obtain the necessary initial subdivision approval by the County and the Village, Defendants have failed to satisfy the two-part test underlying their claim of prior vested rights. Nor do we consider the approval obtained by the EID for such project to satisfy the initial factor for establishing the existence of prior vested rights. Rather, approval by EID was only secondary. *See, e.g.*, NMSA 1978, § 74–1–8(B) (Repl.Pamp.1993) ("Nothing ... preempts the authority of any political subdivision to approve subdivision plats.").

Additionally, we hold that Defendants did not establish a "nonconforming" use for zoning purposes prior to the annexation by the Village. A party asserting the existence of a nonconforming use must establish the legality and existence of the actual, nonconforming use prior to the enactment of a zoning ordinance that restricts such use. *See City of Las Cruces v. Huerta*, 102 N.M. 182, 184–85, 692 P.2d 1331, 1333–34 (Ct.App.), *cert. denied*, 102 N.M. 225, 693 P.2d 591 (1984). Here, it is not necessary to address whether Defendants' $50,000 plus development costs constituted "substantial construction work" to qualify as an actual use prior to the annex-

ation and imposition of zoning ordinances by the Village, because Defendants failed to submit the proper applications for construction of such subdivision. Thus, Defendants have failed to demonstrate that they satisfied the threshold requirement establishing the *legality* of the property's use.

◼ Because of the annexation of their property by the Village, Defendants are correct in asserting that they are no longer required to comply with the County's ordinances; however, since we hold that Defendants' mobile home park development constitutes a subdivision under the Village's ordinance, they were, both at the inception of the project and at the time of the Village's annexation of such property, required to comply with all applicable planning and platting requirements. *See* NMSA 1978, § 3–20–7 (Repl.1985) (subdivision within the platting jurisdiction of a municipality). When they began the project, Defendants were also subject to the extraterritorial planning and platting jurisdiction of the Village. Until Defendants submit the proper plans, plats, and applications to the Village and obtain the requisite approval thereon, the rights of Defendants cannot be said to have vested, *see Brazos Land, Inc.*, 115 N.M. at 170, 848 P.2d at 1097, and Defendants are therefore subject to any applicable zoning and subdivision ordinances of the Village, which are in effect at the time Defendants submit their application for construction of the subdivision. *See, e.g., In re Sundance Mountain Ranches, Inc.*, 107 N.M. at 194, 754 P.2d at 1213 (" 'Generally, a property developer is vulnerable to shifts in zoning or other land use regulations occurring during the [initial] stages of [the] project.... [H]e must comply with the ordinances in effect at the time he secures a ... permit.' " (quoting *Raley v. California Tahoe Regional Planning Agency*, 68 Cal.App.3d 965, 137 Cal.Rptr. 699, 705 (1977)).

◼ Defendants contend that the Village has either waived or is estopped from enforcing its applicable ordinances against Defendants. The bases of Defendants' arguments are unclear, but they appear to be that: (1) the Village did not argue to EID that Defendants had not complied with applicable subdi-

vision or zoning ordinances; (2) the Village's notice to Defendants, once the land was annexed into the Village, that the Village's existing one unit per acre zoning on all land within the Village applied to Defendants' land, was not applicable to Defendants because the Village did not have extraterritorial zoning before annexation; and (3) the Village's subsequent revision of its zoning ordinance was without specific notice to Defendants. The trial court did not find any waiver, and therefore no issue of waiver will be reviewed. To the extent that the trial court found that the Village was estopped to enforce its ordinances, we find nothing in the record to support a finding of estoppel. The Village always took the positions that Defendants' failure to secure approval of the County prevented Defendants from relying on a vested rights analysis and that, once the land was annexed, the Village's regulations applied. This being the case, this is not a case where "right and justice" demand application of the doctrine of estoppel against the government. *See Rainaldi v. Public Employees Retirement Bd.*, 115 N.M. 650, 657, 857 P.2d 761, 768 (1993) (estoppel against the government is applied sparingly, only in exceptional cases in which there is a shocking degree of aggravated conduct, and only where right and justice demand it).

## CONCLUSION

The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

PICKARD and BOSSON, JJ., concur.