**WOLF PEN PRESERVATION ASSOCIATION, INC. and Arnold Zegart, Appellants,**

v.

**LOUISVILLE & JEFFERSON COUNTY PLANNING COMMISSION, CANFIELD–KNOPF PROPERTIES, INC. and Estate of Andrew W. Bornhauser, Appellees.**

**No. 96–CA–0558–MR.**

Court of Appeals of Kentucky.

Jan. 31, 1997.

Case Ordered Published by Court of Appeals April 4, 1997.

Arthur L. Williams, Christopher R. Fitzpatrick, Woodward, Hobson & Fulton, Louisville, for Appellants.

Mike Conliffe, Jefferson County Attorney, Paul B. Whitty, Louisville, Louisville & Jefferson County Planning Commission, for Appellee.

Charles T. Baxter, William B. Bardenwerper, Mackenzie & Peden, P.S.C., Louisville, Canfield–Knopf Properties, Inc., for Appellee.

Before WILHOIT, C.J., and JOHNSON and MILLER, JJ.

## OPINION

JOHNSON, Judge.

Wolf Pen Preservation Association, Inc. (the Association),[1] and its president, Arnold Zegart, have appealed from a judgment of the Jefferson Circuit Court entered on January 29, 1996. The lower court affirmed a decision of the Louisville and Jefferson County Planning and Zoning Commission (the Commission), giving approval to Canfield–Knopf Properties, Inc. (C–K) to subdivide and develop 57½ acres situated between the Gene Snyder Freeway and Wolf Pen Branch Road in eastern Jefferson County, and known as Wolf Pen Woods. We affirm.

Since 1963, the area of the proposed development has been zoned R4, a classification which allows up to 4.84 dwellings per acre. The development's proposed density of 2.72 units per acre, is thus roughly half that permitted under the applicable zoning law. Nevertheless, the Association's major focus before the Commission, in its appeal in the Jefferson Circuit Court, and in this appeal, is its contention that the proposed development's density is not compatible with the "existing residential density" along the Wolf Pen Branch corridor. While many of the Association's members own property zoned R1, a classification allowing only 1.08 dwellings per acre, the Commission was aware, as the minutes of its December 1, 1994 meeting reflect, that it had never required lots in subdivisions bordering the Snyder Freeway to be larger than those proposed in this development. Furthermore, the density of another nearby development, Bridgepointe, is approximately the same as that of Wolf Pen Woods.

The density of an area is primarily determined by its zoning classification. It is abundantly clear, as both the Commission and C–K point out, that the Association is attempting to down-zone this acreage, which heretofore has provided residents along Wolf Pen Branch Road with a natural buffer from noise emanating from the Snyder Freeway, without utilizing the appropriate procedures to effect zoning changes as provided in Kentucky Revised Statutes (KRS) 100.211(1). In their reply brief, the appellants ponder whether "it is only the developer/property owner who has the power and authority to determine or propose a lower density per acre" than the maximum permitted by zoning legislation. Indeed, this appeal is premised on the appellants' apparent refusal to accept the rights attendant to ownership of property, specifically the right to use property as one sees fit within the parameters of zoning legislation. *See Smith v. Howard*, Ky., 407 S.W.2d 139 (1966).

The appellants' sole challenge to the Commission's approval of C–K's project is that it failed to make any findings on the issue of the subdivision's compatibility with that of adjacent properties. They insist that the Commission's failure to take these "aesthetic" matters into consideration has resulted in an arbitrary and capricious decision. The Commission contends that its decision to grant or deny approval of a subdivision plat is a ministerial act that must not be predicated on subjective considerations. Specifically as to density, the Commission contends

---

1. The Association describes itself as a "not-for-profit corporation of property owners, formed for the purpose of overseeing and safeguarding the quality of preservation and enhancement of the rural residential character and integrity of the Wolf Pen Branch Corridor."

it is without authority to require a lower density than that permitted by zoning except, as the Metropolitan Subdivision Regulations provide, where matters of health and safety are implicated. The Commission's understanding of its obligations in this regard is consistent with the holding in *Snyder v. Owensboro*, Ky., 528 S.W.2d 663 (1975), which reasons in pertinent part:

> Our statute, KRS 100.281, specifies requirements for the contents of subdivision regulations. The statute plainly contemplates that specific standards shall be set forth, rather than mere broad generalizations with regard to health, safety, morals and general welfare, or the use of such flexible terms as "most advantageous development."
>
> The proposition is generally accepted in other jurisdictions that a mere generalization of matters to be considered in approval of subdivision plats is not sufficient; there must be rules and regulations constituting specific standards to be applied in determining whether approval is to be granted. And the power of a planning board to approve or disapprove plats is limited by those rules and regulations.
>
> It follows, therefore, that the approval of subdivision plats is a *ministerial* act.

*Id.*, at 664 (emphasis in original) (citations omitted).

Since the Commission made its decision by comparing C–K's plans to a very detailed set of subdivision regulations, the Association attempts to obtain reversal of the Commission's approval by arguing that those regulations are invalid. They insist that the regulations fail to comply with the Comprehensive Plan adopted by the Commission pursuant to KRS 100.183,[2] a plan plainly designed to be used as a "guide." *See Ward v. Knippenberg*, Ky., 416 S.W.2d 746 (1967). In any event, even if the plan were something more than a mere guide, it would not require the density of Wolf Pen Woods to be any less than that approved by the Commission. The Comprehensive Plan categorizes areas from "extremely low" to "very high." Areas zoned R1 and R4 both fall into the "low" category defined in the plan as having greater than 1 and up to 5 dwelling units per acre. Thus, while the Comprehensive Plan contains language the Association contends would require the Commission to "consider the aesthetic effects of differing densities on adjacent developments," even the Association acknowledges that the specific provisions of the plan would neither warrant nor require a result different from that reached by the Commission. It is our opinion that the appellants' argument that the subdivision regulations are inconsistent with the Comprehensive Plan is without any merit.

Utilizing the standard of review set forth in *American Beauty Homes Corp. v. Louisville & Jefferson County Planning and Zoning Commission*, Ky., 379 S.W.2d 450 (1964), the Jefferson Circuit Court determined that the action of the Commission was neither arbitrary nor capricious. We agree and affirm its judgment.

All concur.

---

**2.** KRS 100.183 provides:

The planning commission of each unit shall prepare a comprehensive plan, which shall serve as a guide for public and private actions and decisions to assure the development of public and private property in the most appro-priate relationships. The elements of the plan may be expressed in words, graphics, or other appropriate forms. They shall be interrelated, and each element shall describe how it relates to each of the other elements.