Ted SIZEMORE, Jr., Appellant,

v.

MADISON COUNTY FISCAL COURT
and Citizens for a Better Madison
County, Inc., Appellees.

No. 1999–CA–000962–MR.

Court of Appeals of Kentucky.

Nov. 22, 2000.

Discretionary Review Denied
Nov. 14, 2001.

Case Ordered Published
by Supreme Court Nov. 14, 2001.

Stephen G. Allen, John R. Leathers, Lexington, KY, for appellant.

James T. Gilbert, Richmond, KY, for appellee Madison County.

Before GUDGEL, Chief Judge; COMBS and McANULTY, Judges.

## OPINION

COMBS, Judge.

Ted Sizemore, Jr., appeals from a judgment of the Madison Circuit holding that a proposed mobile home park is subject to state and county subdivision requirements. We affirm.

Sizemore is the owner of a ninety-seven (97) acre tract of land on Red House Road in Madison County, Kentucky. In 1998, he proposed to develop the property into Ashmore Place Mobile Home Park. Sizemore planned to divide the property into more than five hundred twenty-three (523) separate lots, to construct intersecting streets, and to install water lines and sanitary sewers. He anticipated use of the municipal water supply and garbage disposal system and public maintenance of the roads.

Sizemore requested advice on whether the Madison County Subdivision Regulations would affect his proposed development.[1] By letter dated January 30, 1998, Kent Clark, Madison County Judge/Executive advised, in part, as follows:

> Madison County's regulations would not effect [sic] your development *if you own the lots and own or rent the homes in the development.... If, at any point, in the future any lot or parcel is transferred this subdivision of property would be subject to the Madison County Subdivision Regulations.* (Emphasis added).

In February, Sizemore's proposal was discussed by the Madison County Subdivision Advisory Board. Its minutes reflect, in part, the following synopsis:

> Sizemore has a proposal for a mobile [sic] home park on Red House Road.... He has submitted for a package treatment plant and a state highway entrance permit. Highway department will probably request 180 feet for turn lanes.... He has proposed 36 feet street width (plus curb and gutter) which will enable parking on both sides of the street. *Sidewalks will be required on both sides of the street according to county subdivision regulations. The Subdivision Advisory board will draft a letter for Mr. Sizemore stating that when the street in [sic] installed to county standards it can be taken into county maintenance. This letter will also state that Madison County Subdivision Regulations have no zoning restrictions for property in Madison County.*[2]

While Sizemore began the permitting and licensing process for a mobile home park as required by KRS 219.310—219.410 (the "Kentucky Mobile Home Park Act"),

---

1. In 1990, Sizemore had been involved in extensive litigation with the City of Berea concerning whether his plans for a mobile home park would have to conform to the Planning Commission's subdivision regulations. The Madison Circuit Court held that Sizemore's proposed development constituted a "subdivision" of property subject to subdivision regulations. *See Sizemore v. City of Berea,* Madison Circuit Court, 89–CI–346.

2. No such letter appears of record.

he did not submit a plat to the Madison County Fiscal Court or to the Subdivision Advisory Board for approval of the proposal.

On June 5, 1998, the Madison County Fiscal Court filed this action seeking to enjoin Sizemore's unapproved development of Ashmore Place Mobile Home Park. KRS 100.291. The County contended that Sizemore's proposed development constituted a "subdivision" pursuant to KRS 100.111(22) and Article II of the Madison County Subdivision Regulations. Since Sizemore had failed to secure approval for the proposal, the County argued that subdivision regulations had been violated. Submitted on motions for summary judgment, the trial court agreed.

The Madison Circuit Court found that the subdivision statutes and regulations applied to residential, subdivided property used for leasehold purposes just as they applied to property owned by a freeholder. The judgment noted that the legislature has recognized the right of local government to be involved in the initial stages of development where public health and welfare are considerations and where public services would be required to maintain the project. It also noted that the Madison County Fiscal Court had adopted regulations in 1995 recognizing the legitimate public purpose inherent in developing land in harmony with the interests of public safety, health, and welfare. The court held that the development of Ashmore Place Mobile Home Park constituted development of a "subdivision" within the purview of KRS 100.111(22) and the County's subdivision regulations. Further development was enjoined, and this appeal followed.

■ Sizemore argues that the trial court erred in concluding that subdivision regulations apply to the development of Ashmore Place Mobile Home Park. He contends that the proposed development does not constitute a "subdivision" within the meaning of the statutes and regulations because he has no intention of *selling* the divided lots, intending only to lease the spaces for mobile homes. Since the land is not being divided for purpose of sale, it is not a "subdivision" under the pertinent statutes and regulations. We disagree.

KRS 100.273(2) specifically empowers a county fiscal court to adopt regulations for the subdivision of land within its boundaries. The Madison County Subdivision Regulations and KRS 100.277 require Fiscal Court approval for a "subdivision" of land. Both KRS 100.111(22) and the Madison County Subdivision Regulations define "subdivision" to mean:

> [T]he division of a parcel of land into three (3) or more lots or parcels except in a county containing a city of the first, second or third class or in an urban-county government where a subdivision means the division of a parcel of land into two (2) or more lots or parcels; for the purpose, *whether immediate or future,* of sale, *lease, or building development,* or if a new street is involved, any division of a parcel of land; provided that a division of land for agricultural use and not involving a new street shall not be deemed a subdivision ... (Emphasis added).

■ We agree with the trial court that the language of KRS 100.111(22) is unequivocal. Nothing in these definitions requires that divided lots be offered or developed solely for sale in order to constitute a "subdivision" of property. "[U]nder the rule of liberal construction, the words employed in the statute must be given their ordinary meaning.... If the language is plain and unambiguous it must be given effect." *Commonwealth v. Shivley,* Ky., 814 S.W.2d 572, 573–74 (1991).

The plain language of the pertinent legislation allows for no other interpretation.

■ Our conclusion is further reinforced by a consideration of the clear intent and purpose of these statutes and regulations. The intent is to give local government the power to control the subdivision of land in order to protect its citizens in matters of public safety, health, and welfare. These public concerns are just as apparent and necessary for persons holding subdivided property under a lease interest as for those holding under a deed—or as to any other interest in any subdivided property.

Moreover, in reviewing substantially similar statutes and regulations, other state appellate courts have construed the language in harmony with our analysis. In *City of Weslaco v. Carpenter*, 694 S.W.2d 601 (Tex.Ct.App.1985), the Texas Court of Appeals concluded that a mobile home park falls within the definition of the term "subdivision"—regardless of whether the intent of the developer is to "sell" or "lease" individual mobile home sites. *See also Cowboy Country Estates v. Ellis County*, 692 S.W.2d 882 (Tex.Ct.App.1985) (a mobile home park is a "subdivision" even though the owner has no intention of selling lots but instead intends only to lease them).

Similarly, in *Sandoval County Bd. of Commissioners v. Ruiz*, 119 N.M. 586, 893 P.2d 482 (Ct.App.1995), the New Mexico Court of Appeals reasoned that a mobile home park constitutes a "subdivision" within the meaning of state, county, and municipal land use laws. "A different interpretation, we believe, is contrary to the plain meaning of the statute and ordinances and nullifies the basic purpose of such laws." *Id.* at 485.

A review of the plat prepared for Ashmore Place Mobile Home Park clearly indicates that Sizemore has partitioned the property as part of his intent to develop it. As a result, the trial court did not err by concluding that Sizemore's planned mobile home park constitutes a "subdivision" of land within the purview of KRS 100.111(22) and Madison County's Subdivision Regulations.[3] Consequently, before development of the project can proceed, Sizemore must seek and obtain the approval of the Madison County Fiscal Court.

■ Sizemore argues that application of the subdivision regulations to his proposed development would be unconstitutional. We do not agree. That argument appears to be premised on his contention and belief that mobile home parks will not be permitted as a matter of fact in the rural areas of Madison County. However, as Sizemore has not sought approval for such a development, he has not established a sufficient basis for our review. The matter is not ripe for any judicial review. As the trial court noted, "[c]ourts should not lightly assume that future administrative action not yet taken will be arbitrary." *Preston v. Meigs*, Ky., 464 S.W.2d 271, 274 (1971).

■ Finally, the trial court did not err by concluding that its holding should apply despite the equivocal actions of the Subdivision Board and County Judge/Executive. Sizemore argues essentially that because the County gave him erroneous information, it should be estopped from enforcing its applicable ordinances against him.

■ It is undisputed that Sizemore failed formally to apply to either the Madison County Fiscal Court or to the Subdivi-

---

**3.** Sizemore's reliance on *Higdon v. Campbell County Fiscal Court*, Ky., 374 S.W.2d 511 (1964) is misplaced. The language cited appears to be mere *dicta* and was based upon a definition of the term "subdivision" appearing in the Campbell County subdivision regulations which did not include either divisions for lease or divisions involving the creation of new streets. As a result, the case is inapplicable.

sion Advisory Board for approval of his proposed development. Instead, he elected to make an informal presentation to the Subdivision Board and to establish separately the County Judge/Executive's position on the issue. While "[t]he record is unclear as to how the Ashmore Place development appeared upon the Subdivision Board's agenda for February 9, 1998[,] . . . the minutes [nonetheless] reflect some intention of the Subdivision Board to impose requirements at least as to sidewalks in the development, and perhaps as to roadways." (Order of Summary Judgment for the Plaintiffs, at 2). In light of the County Judge/Executive's equivocal view, the Board's ambiguous position, and Sizemore's considerable experience with the same issue in another forum, it cannot reasonably be argued that the County wrongfully induced Sizemore to act to his detriment. As the trial court noted, Sizemore always had access to the statutes and regulations at issue and is chargeable with notice of the proper procedure. Moreover, a casualty of invoking equitable estoppel here would impair the public purpose of granting the citizens of the community the opportunity for a full and fair consideration of the proposed development as it relates to the safety, health, and welfare of the public. The doctrine of equitable estoppel may be invoked against a governmental agency only under exceptional circumstances. *Natural Resources and Environmental Protection Cabinet v. Kentucky Harlan Coal Co. Inc.*, Ky.App., 870 S.W.2d 421 (1993). Exceptional circumstances do not include erroneous interpretations of the law. *Id.*

The judgment of the Madison Circuit Court is affirmed.

ALL CONCUR.