RENDERED: MAY 30, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0864-MR

SUNANZA, INC.                                                          APPELLANT

                        APPEAL FROM OLDHAM CIRCUIT COURT
v.                      HONORABLE JERRY CROSBY, II, JUDGE
                        ACTION NO. 23-CI-00357

OLDHAM COUNTY PLANNING
AND ZONING COMMISSION; BEN
WINTERS; BERRY HAMPTON; BOB
KLINGENFUS; ED HAFLING; GREG
KING; IVA DAVIS; JOE ENDER;
JOHN FALVEY; KATIE NASSER;
SAM FINNEY; SUE ANN JONES;
SUZY WALSER; TOM ELDER; TOM
MARSH; AND WILLIAM DOUGLAS                                            APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CETRULO, AND TAYLOR, JUDGES.

CETRULO, JUDGE: This is an appeal from an order of the Oldham Circuit Court

upholding a decision of the Oldham County Planning and Zoning Commission

("the Commission"). That decision denied approval of a subdivision plan sought

by Sunanza, Inc. ("Sunanza") for an area off of Old Sligo Road in LaGrange. The proposed subdivision would have included 49 lots on 183 acres and spanned portions of both Oldham and Henry Counties. As set forth below, we affirm.

## PROCEDURAL BACKGROUND

Sunanza first applied for preliminary plan approval for this subdivision in April 2022. With its application, Sunanza submitted a request for a waiver from Part 6 of Section 270-060 of the Oldham County zoning ordinance. That portion of the ordinance mirrors Section 7.3(F) of the county's subdivision regulation. The regulation sets forth the levels of water flow required for fire protection in new developments, in part, as follows:

**Part 6 Fire Flow**
1. The water supply system for residential developments must be capable of delivering a minimum sustained fire flow as follows:

| Residential Developments | Fire Flow Requirements |
|---|---|
| Single-family detached residential developments of 1-acre lot or larger with minimum building (including accessory buildings) setback of 30 feet from any property line | 500 GPM4 with a residual pressure of no less than 20 PSI5 |

In seeking a waiver from this provision, Sunanza explained that the Henry County Water District (which owned the water lines and would also provide water service to this proposed development) had already conducted testing and determined that it could only provide a maximum flow of 360 gallons per minute.

Sunanza therefore proposed to mitigate the deficiency by adding two 50,000 gallon cisterns to the development to supplement the water supply available from fire hydrants.

Sunanza's application was first heard at a public hearing before the Commission in June 2022. Several witnesses testified and several attendees expressed opposition, resulting in a continuance of the matter until July 26, 2022. Between these two meetings, the Henry County Water District voted against allowing fire hydrants on its water line out of concern regarding sufficient water flow. Considering that information, Sunanza was prepared with an alternative mitigation plan. This plan required that sprinkler systems would be installed within each home of the development in conjunction with the large cisterns. At this second meeting, the Commission again heard testimony, arguments for and against the subdivision, and considered evidence.

Section 7.3 requires that "alternative fire protection plans be approved by the fire chief in the affected jurisdiction." According to the minutes from the second meeting, LaGrange Fire Chief Sitzler ("Chief Sitzler") advised that this alternative plan would meet requirements for fire flow and gave his approval.[1] Despite this approval by Chief Sitzler, the Commission voted to deny the

---

[1] The circuit court referred to this approval as "unenthusiastic." Sunanza cites to meeting minutes where Chief Sitzler stated that he wished every home had sprinkler systems and cisterns. Regardless, he did approve this proposal in July 2022.

application.  Sunanza appealed that 2022 decision to the Oldham Circuit Court.  In its first order, the circuit court found that the Commission had violated Sunanza's right to procedural due process by denying the application with "little more than a conclusion . . . not accompanied by any basic facts."  The circuit court remanded the matter to the Commission to "articulate specific findings of relevant fact" to support its conclusion that the application fell short of the regulations, and to enable a reviewing court to "conduct an appropriate review under the law."  The first order clarified that a rehearing was not required.

Upon remand, the Commission did conduct a hearing on May 23, 2023.  However, at this hearing, a commissioner simply read into the record proposed findings of fact and again moved for denial of the subdivision proposal.  The Commission again voted to deny the subdivision plan with findings as follows:

> MOTION TO DENY
>
> [Sunanza] has proposed reliance upon cisterns and sprinklers as mitigating alternatives with respect to Section 7.3G. Mitigation.
>
> Standards appear in Section 7.3F and state that the water supply system for residential developments must be capable of delivering a minimum *sustained* fire flow.  In this instance, the applicable standard is a sustained 500 GPM with residential pressure of not less than 20 PSI.
>
> Mitigation described under 7.3G permits reliance upon alternatives but does not vacate the minimum fire flow

requirement which is to be sustained. In whatever manner the alternative resource is provided, the minimum standard remains intact on a sustained basis and without qualification under the regulation.

THEREFORE:
Testimony and evidence contained in the record fails to demonstrate compliance with the Fire Protection Standards of the Oldham County Subdivision Regulations. The single replenishment source available (the Henry County Water District) broadly acknowledged inadequate sustainable flow required for conventional fire hydrants and [Sunanza] failed to demonstrate adequacy to reliably provide sustained flow as a mitigated alternative and therefore fails to meet the required standards.

The matter returned to the Oldham Circuit Court. On this second appeal, the circuit court held that the decision of the Commission was supported by substantial evidence and that the Commission acted within the constraints of its statutory powers and did not exceed its authority. This appeal followed.

**STANDARD OF REVIEW**

"The courts review a decision of an administrative agency, such as the Oldham County Planning and Zoning Commission, solely to insure that its rulings are not arbitrary, capricious, or unreasonable." *Oldham Farms Dev., LLC v. Oldham Cnty. Plan. & Zoning Comm'n*, 233 S.W.3d 195, 196 (Ky. App. 2007) (citation omitted). Administrative action is arbitrary, capricious, or unreasonable only if: 1) it exceeds the scope of the agency's granted powers; 2) the agency failed to provide procedural due process; or 3) the agency's decision was not

supported by substantial evidence. *Am. Beauty Homes Corp. v. Louisville &*
*Jefferson Cnty. Plan. & Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky. 1964).

## ANALYSIS

On appeal, Sunanza sets forth three arguments. First, it argues that the Commission misapplied the law, ignoring that it was performing a ministerial function only in approving or disapproving a subdivision proposal. Second, Sunanza argues that the Commission misinterpreted the regulation. Third, it asserts that the decision was not based upon substantial evidence.

### 1) **Was the Commission's Ruling a Ministerial Act**?

At the heart of Sunanza's first argument is Kentucky Revised Statute 100.277 which states that "[a]ll subdivision of land shall receive commission approval." Sunanza points to this statutory language to argue that a planning board's power is limited by rules and regulations and that the determination of whether there is compliance with those regulations is a ministerial act. *Snyder v. Owensboro*, 528 S.W.2d 663, 664 (Ky. 1975). A ministerial act has been defined as one that "is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).

Sunanza argues that the Commission's decision was premised upon subjective, generalized, or unarticulated standards and not based upon fixed or

concrete facts or standards. Rather, Sunanza maintains that the Commission based its denial on general concerns for the health, safety, and welfare of the public. This argument was raised before the circuit court as well and rejected. As that court found, the Commission did generally refer to the purpose and intention of the regulations in its findings. However, it also specifically found that Sunanza's plan failed to satisfy Section 7.3 of the regulations. The circuit court expressly found that this regulatory language *was* a specific and concrete standard governing the approved subdivision specifications. The circuit court agreed that approval of a subdivision plat is a ministerial duty. *Snyder*, 528 S.W.2d at 664. However, it found that the Commission had made specific findings using concrete standards, concluding that Sunanza "failed to demonstrate adequacy to reliably *provide* sustained flow as a mitigated alternative and therefore failed to meet the required standards."

Chapter 100 of our Kentucky Revised Statutes specifies requirements for the contents of subdivision regulations and clearly "contemplates that specific standards shall be set forth, rather than mere broad generalizations with regard to health, safety, morals and general welfare[.]" *Wolf Pen Pres. Ass'n, Inc. v. Louisville & Jefferson Cnty. Plan. Comm'n, Canfield-Knopf Props., Inc.*, 942 S.W.2d 310, 312 (Ky. App. 1997). However, the statute still requires the planning commission to give approval. The overall intent of statutes and regulations

requiring approval for a subdivision of land "is to give local government the power to control the subdivision of land in order to protect its citizens in matters of public safety, health, and welfare." *Sizemore v. Madison Cnty Fiscal Ct.*, 58 S.W.3d 887, 890 (Ky. App. 2000).

The question then for this Court is whether the circuit court erred in finding the Commission adhered to its ministerial duty. We find, without question, that it did not so err. When courts review decisions made by zoning commissions, the commission decision is presumed reasonable and based upon the law. *Hatch v. Fiscal Ct. of Fayette Cnty.*, 242 S.W.2d 1018, 1021 (Ky. 1951). On the second appeal, the circuit court found that the Commission's decision was based upon specific findings, and we agree. However, this leads us to Sunanza's second argument – that the Commission's findings were based on a misinterpretation of the regulation.

2) **Did the Commission Misinterpret the Regulation**?

The parties agree that Section 7.3(F) of the regulations requires water supply systems, for residential developments of one-acre lots or larger, to be capable of delivering a *minimum sustained fire flow* of 500 GPM with a residual pressure of no less than 20 PSI. Sunanza could not meet that standard because Henry County Water District would not place fire hydrants in the proposed development. Thus, Sunanza proposed an alternative mitigation plan. Where the

standards cannot be met, Section 7.3(G) allows for a mitigation proposal subject to approval as follows:

> Mitigation
> Buildings on lots that do not meet the above fire protection standards [*e.g.*, 7.3(F)] will be subject to approval by the fire chief in the affected jurisdiction. Examples of mitigation may include but not be limited to: the use of sprinklers, cisterns, dry hydrants or other alternative water sources that meet the minimum fire flow requirements.

First, Sunanza argues that under 7.3(G), once the plan was approved by Chief Sitzler, the Commission had no option but to find that mitigation was met. Sunanza contends that Chief Sitzler's approval was the only requirement for approval of a mitigation plan. However, while the first sentence of Section 7.3(G) states that alternative measures will be subject to approval by the fire chief, it does not state that the fire chief's approval is the *only* approval needed. Again, the approval is given to local government as set forth above. We cannot agree with Sunanza's interpretation that Chief Sitzler's approval was conclusive on the issue.

Secondly, the Commission's interpretation of the overall regulations was that 7.3(F)'s fire flow regulations also applied to the alternative fire protection plan submitted here under Subsection (G). Sunanza argues that the clause at the end of 7.3(G), requiring meeting of minimum fire flow requirements, only modifies the noun "other alternative water sources" and not the other enumerated alternatives, such as sprinklers and cisterns.

Sunanza asserts that according to the "last antecedent clause" rule of construction, a qualifying phrase is to be confined to the last antecedent unless there is something in the instrument requiring a different construction. It has been stated that the doctrine of the last antecedent is a valid rule of statutory construction, but it is not the only such rule. *Popplewell's Alligator Dock No. 1, Inc. v. Revenue Cabinet*, 133 S.W.3d 456 (Ky. 2004).[2] This Court has also held the contrary rule of construction can be true. In *Pike County Board of Assessment Appeals & Revenue Cabinet v. Friend*, 932 S.W.2d 378, 379-80 (Ky. App. 1996), we stated that "[g]enerally, when several words of a statute are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of language dictates that the clause be read as applicable to all." *Id.* (citing *In re Graves' Estate*, 27 F.Supp. 717, 719 (W.D. Ky. 1939)). Finally, as the United States Supreme Court has recently held, "[t]he rule of the last antecedent is context dependent." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 404, 141 S. Ct. 1163, 1170, 209 L. Ed. 2d 272 (2021).

Here, the Commission and the circuit court read both sections of 7.3 together and found that the examples of mitigation options listed in Subsection (G)

_____

[2] In *Popplewell's,* the Supreme Court also referenced a different rule of construction. *See* 133 S.W.3d at 464 n.33 (Ky. 2004) (quoting 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 47.33, p. 369-73 (6th ed. 2000 Revision) ("Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma.")).

were just that examples. But, the court concluded, all alternative proposals must still meet the minimum sustained fire flow requirements outlined in Subsection (F).

We have previously held that a zoning body's reasonable interpretation of a regulation it is charged with implementing is entitled to deference from the judiciary. *Huxol v. Daviess Cnty. Fiscal Ct.*, 507 S.W.3d 574, 578 (Ky. App. 2016). In exercising its review, the zoning body must not view sections of the regulations in a vacuum, but must consider it as a whole. *Harrison Silvergrove Prop., LLC v. Campbell Cnty. and Mun. Bd. of Adjustment*, 492 S.W.3d 908, 913 (Ky. App. 2016) (citing *Keogh v. Woodford Cnty. Bd. of Adjustments*, 243 S.W.3d 369, 373 (Ky. App. 2007)); *see also Hengehold v. City of Florence*, 596 S.W.3d 599 (Ky. App. 2020). Here, the Commission and the circuit court interpreted both sections of the regulations together to require that any proposal must be capable of delivering a minimum sustained fire flow of 500 GPM, including Sunanza's proposed sprinkler and cistern alternative. "It is well-established that a court's review of the action of an administrative agency is limited to review, not reinterpretation." *Allen v. Woodford Cnty. Bd. of Adjustments*, 228 S.W.3d 573, 575 (Ky. App. 2007), *as modified* (Jul. 13, 2007) (internal quotation marks and citation omitted). We give the required deference to the Commission's interpretation herein and find no error in the circuit court's review.

-11-

3) **Was the Decision Supported by Substantial Evidence**?

Sunanza asserts that the evidence was undisputed that the proposed development would comply with the aforementioned requirements. It did produce evidence that the fire chief approved of the plan. It did produce evidence that the required flow and residual pressure were present upon its testing.

In contrast, the Commission asserts that the overall evidence left doubt as to whether the flow could be *sustained* and water pressure maintained for residents in the event of a fire. According to some testimony, concerns as to refilling the cisterns and maintaining the residual pressure of 20 PSI could not be fully determined until design of the pipes was completed, and the pipe design had not yet been determined.

As our Supreme Court recently held:

> [T]he Planning Commission is a factfinder analogous to a jury, free to give weight and credibility to witnesses as it sees fit. It is beyond the judiciary's authority to impose a standard of weight and credibility that must be assigned to experts in planning and zoning matters.

*Bluegrass Tr. for Historic Pres. v. Lexington Fayette Urb. Cnty. Gov't Plan. Comm'n*, 701 S.W.3d 196, 217 (Ky. 2024). In short, we cannot substitute our judgment for that of the Commission. Utilizing the standard of review set forth in *American Beauty Homes Corp.*, 379 S.W.2d 450, the Oldham Circuit Court determined that the action of the Commission was supported by substantial

-12-

evidence. The court outlined the evidence and the uncertainty that still remained as to the proposed plan's ability to provide assurance of sustainability. In the context of reviewing administrative agency decisions, "substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *French v. Rev-A-Shelf*, 641 S.W.3d 172 (Ky. 2022) (quoting *Smyzer v. B.F. Goodrich Chem Co.*, 474 S.W.2d 367, 369 (Ky. 1971)). The circuit court held that there was evidence of substance that would lead a reasonable person to conclude Sunanza had failed to meet the requirements of the regulations with regard to sustained water pressure.

## CONCLUSION

In light of the foregoing, we AFFIRM the Oldham Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Clifford H. Ashburner
Stephen J. Mattingly
Suzanne M. Marino
Louisville, Kentucky

BRIEF FOR APPELLEES:

Carol Schureck Petitt
Connor E. Sturgill
Pewee Valley, Kentucky