2004-NMCA-010

84 P.3d 78

**GALLUP WESTSIDE DEVELOPMENT, LLC, and Hadden Construction Company, Inc., Appellants–Respondents,**

v.

**CITY OF GALLUP, a municipal corporation, Rosemarie "Shorty" Sandoval, Louis Bonaguidi, Pat Butler, Charlie Chavez, and John Pena, City Council And Mayor of City of Gallup, Philip Garcia, Charles High, Lidio Rainaldi, Jr., Phillip Gutierrez, Prakash Sundaram, John M. Fuhs, and Paul Graves, Planning and Zoning Commission of the City of Gallup, Appellees–Petitioners.**

No. 22,308.

Court of Appeals of New Mexico.

Oct. 31, 2003.

Certiorari denied, SC28,435, Jan. 9, 2004.

Robert W. Ionta, Gallup, NM, Peter V. Domenici, Jr., Lorraine A. Hollingsworth, Dolan & Domenici, P.C., Albuquerque, NM, for Appellants.

Thomas Lynn Isaacson, Mason, Isaacson & Macik, P.A., Gallup, NM, for Appellees.

## *OPINION*

CASTILLO, Judge.

{1} In spite of its long history and abundant record, this case has but one determinative question: Does Gallup Westside Development, LLC, (Westside) have vested rights in the development of Unit 3 of the Mentmore East subdivision, thus precluding the City of Gallup (City) from making any changes to the terms of an expired Assessment Procedure Agreement (APA) pertaining to Unit 3 of the subdivision? This case began in 1997, when the City approved a letter agreement (1997 Letter Agreement) amending and extending the APA. After a number of intervening events, the City's decision was appealed to the district court. Acting in its appellate capacity, the district court issued an order reversing the City's decision and issued a writ of mandamus requiring the City to comply with the terms of the original APA without amendment. The City contends that the district court erred when (1) it substituted its judgment for that of the Planning and Zoning Commission (PZC) and City, (2) it issued the writ, and (3) it made findings of fact and conclusions of law. We hold that Westside has no vested rights. Accordingly, we quash the writ of mandamus issued in the district court and reverse its final order.

## I. BACKGROUND

{2} In 1975, final plats for Phase 1 development of a subdivision known as Mentmore East were submitted to and approved by the City, conditioned upon the developers' making certain infrastructure improvements. Phase 1 development was divided into Units 1, 2, and 3, each platted separately, with Unit 4 added later. The original developers, predecessors-in-interest to Westside, executed an APA for Units 1, 2, and 3 with the City and a separate APA for Unit 4.

{3} The APA sets forth procedures by which required improvements are to be installed, restricts the sale of any lot prior to the completion of infrastructure improvements, and provides that plat approval is on the express condition that developers comply with conditions in the APA; it also allows for the City to vacate the plats if conditions are not met. Additionally, the APA provides that developers can make infrastructure improvements "only after approval of the plans and specifications for such improvements by the public works director of the city of Gallup, such plans and specifications to be in accordance with any plans and specifications then in use by the city of Gallup." Paragraph 6 of the APA states that the agreement is to remain in effect for twenty years from the date of its March 10, 1975, execution, or until March 10, 1995. The APA was recorded in 1975. Development proceeded on Units 1, 2, and 4.

{4} The development of Unit 3 is the subject of this appeal. Unit 3 was originally platted with 135 single-family residences and a separate 12.85–acre parcel. In 1980, Unit 3 was split into separate ownership. In 1981, all of Unit 3, including the 12.85–acre parcel was rezoned to allow development of a mobile home subdivision. Title to the 135 lots passed to Westside when it was formed in 1996; the district court, in 1999, quieted title to the 12.85–acre parcel in the name of Had-

den Construction Co., Inc. (HCI). The owner of HCI is the sole owner of Westside.

{5} Although initial grading of roads in Unit 3 was done in the 1970s and some electric utilities were installed in platted easements in the rear of Unit 3 lots abutting Unit 4, it was not until 1996, when Westside requested it, that anyone requested a site development review in order to develop Unit 3. The parties agree that by then, the APA had expired. Rather than vacate the original plat, City staff recommended to the PZC that the APA be extended and amended to bring the development in line with the then current building standards and practices.

{6} At its May 14, 1997, meeting, the PZC agreed with the City staff's recommendation and approved the 1997 Letter Agreement extending and amending the APA. While Westside did not oppose the extension of the APA's effective date, it strongly opposed other provisions of the 1997 Letter Agreement, including the relocation of utilities to the front of lots, the retention of a minimum of 3.5 acres by the City for a park, and certain drainage and sidewalk requirements. Westside did not execute the 1997 Letter Agreement, nor did it appeal the PZC's approval.

{7} One year later, Westside renewed its application for site development review and proposed its own version of a letter agreement. The PZC voted to deny Westside's version of a letter agreement, thereby reaffirming its approval of the 1997 Letter Agreement. Westside appealed to the City Council (hereafter referred to as City). On August 25, 1998, the City, after a public hearing, voted to affirm the decision of the PZC. Westside then appealed to the district court. Because technical problems with the tape recorder prevented the district court from reviewing the complete record of the hearing by the City, the district court remanded the case to the City for a de novo hearing on Westside's application.

{8} The rehearing held on December 14, 1999, lasted three hours. Prior to the rehearing, Westside had submitted to the City more than 760 pages of record with a total of seventy-eight exhibits, including maps, plans, and plats. The City heard testimony from Westside, a former City engineer, the City planner, and thirteen citizens. Once again, the City affirmed the PZC's approval of the 1997 Letter Agreement.

{9} On January 10, 2000, Westside, now joined by HCI, filed another appeal. We refer to Westside and HCI hereafter as Developers. Developers requested that the district court order the APA extended as originally written without inclusion of the terms of the 1997 Letter Agreement. Pursuant to review standards set forth in NMSA 1978, § 39–3–1.1 (1999) and Rule 1–074 NMRA 2003, the district court issued a final order reversing the City's decision and, in response to Developers' petition for a writ of mandamus, ordered that the City "approve an extension of the 1975 Assessment Procedure Agreement for Mentmore East Unit 3 as originally written." The district court found (1) that there was no substantial evidence to support the City's affirmance of the 1997 Letter Agreement or denial of Westside's proposed revision to the APA and (2) that the City acted contrary to the law. The district court concluded that Developers "have a clear legal right to development of Unit 3 without parks and with utilities located in the rear lot easements and to have the Assessment Procedure Agreement for Mentmore East Unit 3 extension approved without such conditions." This Court granted certiorari.

## II. DISCUSSION

### A. Final Order Reversing the City's Decision

#### 1. Standard of Review

{10} Pursuant to our Supreme Court's recent ruling, this Court will review a district court's decision in an administrative appeal under an administrative standard of review. *Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n,* 2003–NMSC–005, ¶¶ 16–17, 133 N.M. 97, 61 P.3d 806. We "conduct the same review of an administrative order as the district court sitting in its appellate capacity, while at the same time determining whether the district court erred in the first appeal." *Id.* at ¶ 16. The district court may reverse an administrative decision only if it determines that the administrative

entity, here the City, acted fraudulently, arbitrarily, or capriciously; if the decision was not supported by substantial evidence in the whole record; or if the City did not act in accordance with the law. *See* § 39–3–1.1; Rule 1–074; *Rio Grande*, 2003–NMSC–005, ¶ 17.

{11} This case involves a question of substantial evidence. Consequently, we review the district court's ruling by independently examining the entire record, keeping in mind that a reviewing court may not substitute its judgment for that of the City. *See Snyder Ranches, Inc. v. Oil Conservation Comm'n*, 110 N.M. 637, 639, 798 P.2d 587, 589 (1990). We view evidence in the light most favorable to the City while also considering contravening evidence. *See id.* We may, if we were fact-finders in this case, come to a different conclusion than the City; but we may only evaluate whether the record supports the result reached, not whether a different result could have been reached. *See id.* Substantial evidence supporting administrative agency action is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Oil Transp. Co. v. N.M. State Corp. Comm'n*, 110 N.M. 568, 571, 798 P.2d 169, 172 (1990); *see Snyder Ranches, Inc.*, 110 N.M. at 639, 798 P.2d at 589; *Groendyke Transp., Inc. v. N.M. State Corp. Comm'n*, 101 N.M. 470, 477, 684 P.2d 1135, 1142 (1984). The party seeking to overturn the City's decision must establish that there is no substantial evidence in the record to support the decision. *See Hart v. City of Albuquerque*, 1999–NMCA–043, ¶ 19, 126 N.M. 753, 975 P.2d 366. We review questions of the City's and district court's interpretations of the law de novo. *See Rio Grande*, 2003–NMSC–005, ¶ 17. In this case, we reverse because there was substantial evidence in the whole record to support the City's decision and therefore the district court erred in its implicit determination that the City failed to act in accordance with the law.

## 2. Vested Rights

{12} In reversing the City's decision, the district court concluded that Developers "acquired vested rights in the approved subdivision." Vested rights protect a developer from retroactive application of newly adopted regulations. *Brazos Land, Inc. v. Bd. of County Comm'rs*, 115 N.M. 168, 170, 848 P.2d 1095, 1097 (Ct.App.1993). Developers argue that their vested rights protect them from having to comply with regulations adopted after the City gave the subdivision final plat approval in 1975. Therefore, they contend, their vested rights justify the district court's determination that the 1975 APA must be extended without amendments.

{13} We view the question of vested rights as determinative in this case. There is a two-pronged test for vested rights in New Mexico: First, there must be approval by a regulatory body; second, there must be a substantial change in position in reliance thereon. *Brazos Land, Inc.*, 115 N.M. at 170, 848 P.2d at 1097; *In re Sundance Mountain Ranches, Inc.*, 107 N.M. 192, 194, 754 P.2d 1211, 1213 (Ct.App.1988). We conclude that Developers fail to meet either prong of the test.

{14} The City did give final plat approval to the subdivision. Nevertheless, the first prong of the vested rights test is not met as long as revocation of that approval remains a possibility. *See Parker v. Bd. of County Comm'rs*, 93 N.M. 641, 644, 603 P.2d 1098, 1101 (1979) ("We cannot equate the approved subdivision plat in this case with vested property rights, as the approval was conditioned upon performance by the subdivider."); *cf. In re Sundance Mountain Ranches, Inc.*, 107 N.M. at 194–95, 754 P.2d at 1213–14 (stating that rights vested in a subdivider after compliance with statutory prerequisites and a determination by the board of county commissioners that compliance actually occurred). Here, the final approval of the subdivision plat in 1975 was expressly conditioned on compliance with the terms of the APA. Because the City was able to vacate the plat if conditions were not met, Developers did not have vested rights in the property. We acknowledge that Developers on appeal argue approval of the plat was not conditional. Paragraph 3 of the APA specifically states that plat approval is

on the expressed condition, that [Developers] shall fulfill and comply with each and every condition contained within this agreement. It is expressly agreed that upon the failure of [Developers] to fulfill and comply with each and every provision of this agreement, the plat hereby approved will be vacated.

Given this express conditional language of the APA, we reject Developers' argument.

{15} The language in paragraph 6 of the APA further supports this conclusion. Pursuant to paragraph 6, the APA expired by its own terms on March 10, 1995. The district court, however, construed the agreement in such a way as to exclude paragraph 6. In interpreting a written contract, each part must be given meaning and significance according to its importance to the contract as a whole. *Bank of N.M. v. Sholer*, 102 N.M. 78, 79, 691 P.2d 465, 466 (1984); *Nearburg v. Yates Petroleum Corp.*, 1997-NMCA-069, ¶ 28, 123 N.M. 526, 943 P.2d 560; 13 Eugene McQuillin, *The Law of Municipal Corporations* § 37.130, at 346–48 (3d ed.1997). Public improvement contracts are "construed with reference to the ordinance authorizing the improvement." McQuillin, *supra*, at 347.

{16} According to the pertinent subdivision regulations that are part of the record, a developer must provide assurances for the installation of public improvements by one of three methods: (1) installation prior to final plat approval, (2) posting bond and installing the improvements within one year after final plat approval, or (3) completing an approved assessment procedure. Gallup, N.M., Ordinance, Subdivision Regulations, § IX(3) (1975). Here, the third method was chosen. The first two methods require action before or within one year. It is reasonable to construe the third method to at least require performance under the approved assessment procedure within a reasonable time; and in the present case, twenty years, and no more, is undoubtedly a reasonable time. *W. Commerce Bank v. Gillespie*, 108 N.M. 535, 538, 775 P.2d 737, 740 (1989) (holding that where no time for performance is specified, law implies a reasonable time for performance). The district court's interpretation renders paragraph 6 irrelevant and meaningless. This Court declines to adopt such a construction of the APA. *See Brooks v. Tanner*, 101 N.M. 203, 206, 680 P.2d 343, 346 (1984) (refusing to adopt a proposed construction that would render meaningless an important contractual phrase).

{17} Even if the first prong had been met, the second prong of the test requires a substantial change in position in reliance on the approval. Developers contend that had they known the 135 lots could not be developed without the imposition of further requirements or that the City would expect a park, the price they paid for the land would have been considerably less. Among the district court's findings were that Developers "substantially relied on the approved plats and paid higher prices for their parts of Unit 3 than they would have if the plats had not been approved." We do not agree with the district court that the purchase price, in this case, resulted in substantial reliance.

{18} Our review of the record discloses no evidence that Developers expended money other than the purchase price in reliance on plat approval. The purchase of land, by itself, does not confer vested rights upon the purchaser. *N. Ga. Mountain Crisis Network, Inc. v. City of Blue Ridge*, 248 Ga.App. 450, 546 S.E.2d 850, 853 (2001). Nor does the record show that Developers incurred extensive contractual obligations pursuant to the purchase or otherwise substantially changed their position in reliance on plat approval. *See Brazos Land, Inc.*, 115 N.M. at 170, 848 P.2d at 1097 (concluding vested rights did not exist where developer showed no change in position); 8 Eugene McQuillin, *The Law of Municipal Corporations* § 25.157, at 575–80 (3d ed.2000) (discussing and compiling case law on how substantial reliance on a permit protects permittee from subsequent zoning laws). In this case, the APA expired in 1995; title to the 135 lots transferred to Westside in 1996; and the 12.85–acre parcel was not quieted in HCI's name until 1999. From this timetable, it is clear that at the time of purchase, Developers were or should have been aware of the conditional language in the APA and its expi-

ration date. Developers argue that they changed their position by paying an excess purchase price and donating a park. We see no substantial evidence in the record that ties such asserted actions to any government assurances to support reasonable, actual reliance or change in position. *See Brazos Land, Inc.,* 115 N.M. at 170, 848 P.2d at 1097 (holding no finding of substantial reliance or change in position); *see also Debold v. Township of Monroe,* 110 N.J.Super. 287, 265 A.2d 399, 403–04 (Ch. Div.1970) (rejecting factually and legally that the developer's excess purchase price estopped municipality from applying later zoning).

{19} Developers appear to rely on some statements made by City staff in briefing memos to elected officials in arguing their vested rights position. Although this issue is not separately briefed and no authority is cited for it, Developers appear to contend that those statements establish that they in fact have vested rights. We disagree. Developers' argument is akin to applying estoppel against a government or applying a theory of judicial admissions. Yet, estoppel against a government is exceedingly difficult to prove. *See Lopez v. State,* 1996–NMSC–071, ¶¶ 18, 20, 122 N.M. 611, 930 P.2d 146. There is no suggestion that the elements were proved here. Similarly, the theory of judicial admissions contains its own requirements, including that admission be that of a party and not be an opinion. *See Lebeck v. Lebeck,* 118 N.M. 367, 372, 881 P.2d 727, 732 (Ct.App.1994). The memo by staff was accompanied by a supporting letter containing a caveat that a court may ultimately disagree. We conclude that the evidence presented to the City supports the conclusion that Developers do not have vested rights in Unit 3 and are therefore not entitled under a vested rights theory to have the APA extended as originally written.

### 3. Appellate Relief

{20} We are mindful that this is not an appeal from the City's denial of plat approval. This is an appeal from the City's decision to approve an extension of the APA on terms other than those in the original APA. The additional terms are contained in the 1997 Letter Agreement, a document that has not been signed by Developers. It is without effect. Currently, as the City articulated during oral argument, there is no agreement between the parties.

{21} This is an appeal from the City's decision to approve an extension of the APA only with specific changes to the original APA. The parties do not argue that the City has no authority to modify the APA in any respect; indeed, Developers submitted their own proposed modifications to the APA for the PZC's approval, which the PZC and the City ultimately denied. Rather, the dispute concerns the terms of the 1997 Letter Agreement, which the PZC and the City did approve. Specifically, Developers contend that their vested rights leave the City without the authority to incorporate certain current subdivision regulations into the 1997 Letter Agreement. The only authority the City does have, according to Developers, is to amend the APA by extending its original terms under subdivision regulations in effect in 1975. We have already rejected the application of vested rights in this case. Other than the theory of vested rights, Developers provide us with no ordinance or case law to support their position that the City has no authority to extend the APA on terms other than those contained in the original agreement.

{22} Based on review of the voluminous record, we believe that the 1997 Letter Agreement was not an agreement in the legal sense of the word; rather, it was the City's offer to amend the APA. As a consequence, there is no contract dispute for this Court to rule on. The City's offer was rejected first when Westside proposed that the City accept a modification of the APA on different terms and again when Developers appealed the actions of the City based on a vested rights theory. There is no assertion that the terms of the 1997 Letter Agreement were based on coercion, fraud, or bad faith. At this point, it appears the parties are in the same position they were before this litigation began. There is no APA in effect, and there is no contract extending the APA. Developers are not required to accept the City's

terms. They remain free to continue their rejection of the 1997 Letter Agreement.

{23} Alternatively, there is nothing to prevent the re-opening of negotiations. As stated by one party during oral argument, successful negotiations require compromise on both sides. Lastly, there is always the option of plat vacation. *See* NMSA 1978, § 3-20-12 (1973). If the parties choose to vacate the plat, Developers have the protections, as well as the burdens, of developing the property under the City's applicable subdivision regulations. It is the obligation of the parties to decide upon which path to journey. This Court refuses to fashion a contract between the City and Developers or otherwise resolve their disputes over suggested contract terms. The parties have the power to freely negotiate such resolution themselves.

### B. Writ of Mandamus

{24} Because, as we have determined, Developers did not have vested rights in development of Unit 3, the district court acted improperly in ordering the City to approve an extension of the APA without amendment. Accordingly, there is no basis for the writ of mandamus; hence, we need not and do not address the City's points on appeal regarding the trial court's exceeding its writ of mandamus authority.

### III. CONCLUSION

{25} We quash the writ of mandamus and reverse the district court's final order. Finally, we affirm the City's authority to offer to extend the APA on terms other than the original terms of the agreement.

{26} IT IS SO ORDERED.

WE CONCUR: LYNN PICKARD and JONATHAN B. SUTIN, Judges.