This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-41831**

**WESTSIDE COALITION OF
NEIGHBORHOOD ASSOCIATIONS
and MICHAEL T. VOORHEES,**

　　Appellants-Appellants,

v.

**CITY OF ALBUQUERQUE,
a New Mexico municipal corporation,**

　　Appellee-Appellee,

and

**CONSENSUS PLANNING, INC., agent(s)
for JUBILEE DEVELOPMENT, LLC,
and GROUP II U26 VC, LLC,**

　　Interested Parties.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Nancy J. Franchini, District Court Judge**

Yntema Law Firm P.A.
Hessel E. Yntema III
Albuquerque, NM

for Appellants

Atler Law Firm, P.C.
Timothy J. Atler
Jazmine J. Johnston
Albuquerque, NM

City of Albuquerque

Lauren Keefe
Devon P. King
Andrew S. Coon
Albuquerque, NM

for Appellee

Resnick & Louis P.C.
John S. Campbell
Albuquerque, NM

for Interested Parties

**MEMORANDUM OPINION**

**WRAY, Judge.**

**{1}**    Appellants Westside Coalition of Neighborhood Associations and Michael T. Voorhees (collectively, the Coalition) appeal the district court's order affirming the decision of the City of Albuquerque (the City) to approve two applications from Consensus Planning, Inc., which represented the applicants Jubilee Development, LLC and Group II U26 VC, LLC (collectively, the Applicants). Because we conclude that substantial evidence in part does not support the City's decision to approve the applications, we do not reach the Coalition's process-related arguments. We affirm in part, reverse in part, and remand for a new hearing on the applications.

**BACKGROUND**

**{2}**    Between 2015 and 2018, the City created the Integrated Development Ordinance (the Ordinance or the IDO). *See* Albuquerque, N.M., Code of Ordinances, IDO ch. 14, art. 16, § 14-16-1 to -7-2 (2022).[1] The Ordinance incorporated City zoning regulations, use regulations, and development standards. *See* Alb. IDO ch. 14, §§ 14-16-3 (zone districts); 14-16-14-3 (overlay zones); 14-16-4 (use regulations); 14-16-5 (development standards). The Ordinance also included provisions for implementing these substantive rules and outlined the roles and responsibilities of certain specialized decision-making bodies. *See* Alb. IDO ch. 14, § 14-16-6.

**{3}**    At the time of the dispute in the present case, the relevant decision-making bodies included the City Council, City Staff, the Development Review Board (the DRB), the Environmental Planning Commission (the EPC), and a land use hearing officer (the hearing officer).The City Council was "the ultimate land use authority for the City," but

---

[1]The district court and the parties cited the July 2021 Ordinance, as amended in July 2022, and it is to that Ordinance that we refer, unless otherwise noted with the 2025 update. It appears that the Ordinance and the processes described in this opinion have been substantially amended since the relevant time period. *Compare* Albuquerque, N.M. Code of Ordinances, IDO ch. 14, art. 16, § 14-16-6-1 (2025), *with* Albuquerque, N.M. Code of Ordinances, IDO ch. 14, art. 16 § 14-16-6-1 (July 2022).

first referred "appeals of decisions by any lower authority" to a hearing officer for "hearing and recommendation." *See* Alb. IDO ch. 14, § 14-16-6-2(A). The City Staff was comprised of the City Planning Department and other departments, "depending on the type of application involved and the delegation of responsibilities granted." *See* Alb. IDO ch. 14, § 14-16-6-2(B)(1), (2). The DRB was "a board made up of staff members from City Departments and Agencies relevant to reviewing private development to ensure that technical standards, including but not limited to those regarding land use, zoning, infrastructure, and transportation, have been met."[2] Alb. IDO ch. 14, § 14-16-6-2(D). The DRB had authority to make certain decisions, including approving certain site plan and preliminary plat applications. *See* Alb. IDO ch. 14, § 14-16-6-2(D)(2) (referring to the DRB's responsibilities in Table 6-1-1); *see also* Alb. IDO ch. 14, § 14-16-6-1 (same).

**{4}** In September 2022, Applicants submitted applications to the DRB in relation to a proposed multifamily development, which requested three proposed actions: a site plan amendment, a new site plan, and a preliminary plat. *See* Alb. IDO ch. 14, § 14-16-6-1 (providing for DRB review). The DRB held two public meetings, voted to approve the applications, and issued a written notification. *See* Alb. IDO ch. 14, § 14-16-6-4(C) (providing for public meetings). According to the IDO, the preliminary plat approval was not a final decision. *See* Alb. IDO ch. 14, § 14-16-6-4(U)(1) ("A decision on any application type other than Preliminary Plat by any decision-making body shown in Table 6-1-1 is final unless appealed . . . ."). For this reason, only the site plan and site plan amendment approvals were appealable decisions at that time, and the Coalition appealed those decisions to the City Council. *See* Alb. IDO ch. 14, § 14-16-6-4(V)(1)(c)(1) (describing available appeals to the City Council); *see also* Alb. IDO ch. 14, § 14-16-6-1 (same). A land use hearing officer conducted a quasi-judicial hearing on the appeal under Alb. IDO ch. 14, § 14-16-6-4(V)(3)(d), and issued a written recommendation that the City Council deny the appeal, *see* Alb. IDO ch. 14, § 14-16-6-4(V)(3)(e)(1) (explaining the hearing officer process). The City Council voted to deny the appeal and as a result, approved the site plan and site plan amendment. *See* Alb. IDO ch. 14, § 14-16-6-4(V)(3)(e)(3) (explaining the City's Council's role on appeal).

**{5}** The Coalition again appealed, this time to the district court under Rule 1-074 NMRA. In the district court, the Coalition challenged the substance of the DRB decision, the processes used to reach the decision, and whether one of the City Councilors should have recused from the decision. While the district court appeal was pending, Applicant requested and received approval of the final plat. The Coalition again appealed the final plat decision to the City Council. The hearing officer held a second quasi-judicial hearing and in the recommendation that followed, the hearing officer found that (1) the DRB did not have authority to approve the amended site plan or the preliminary plat; and (2) "[t]he amended site plan and the preliminary plat shall be revoked and the decision approving the final plat shall be reversed." In light of the hearing officer's second decision, the City Council voted unanimously "to accept the withdrawal by the Applicant" of the final plat. The next day, the district court entered an order that rejected the Coalition's arguments relating to the site plan and amended site

---

[2]In the current IDO, the DRB no longer exists. *See* Alb. IDO ch. 14, § 14-16-6-1 (April 2025) (listing "Review and Decision-making Bodies" in the procedures table).

plan applications and affirmed the City Council's approval of the applications. The Coalition filed a motion for rehearing in the district court, based in part on the hearing officer's second decision, which the district court denied. The Coalition appealed.

## DISCUSSION

{6}     This appeal involves overlapping administrative processes, first for the original applications and later for the final plat. At this stage of the appeal, the overlapping proceedings implicate mootness and finality concerns, which the parties additionally tie to the question of whether the district court exercised appellate or original jurisdiction to consider the issues raised by the Coalition. We begin with these threshold issues before turning to the Coalition's arguments relating to (1) the substance of the City's decision about the site plan and site plan amendment applications and the district court's affirmance and (2) whether the processes employed by the City violated due process protections.

## I.      Jurisdiction, Finality, and Mootness

{7}     To understand the parties' arguments related to finality and mootness, we briefly describe and determine the different sources of the district court's jurisdiction. In an administrative appeal, the district court may "simultaneously exercise its appellate and original jurisdiction." *Shook v. Governing Body of City of Santa Fe*, 2023-NMCA-086, ¶ 9, 538 P.3d 466 (internal quotation marks and citation omitted). Our determination of the jurisdiction exercised by the district court is reviewed de novo. *Ottino v. Ottino*, 2001-NMCA-012, ¶ 6, 130 N.M. 168, 21 P.3d 37. When the district court exercises its appellate jurisdiction, this Court's review under Rule 12-505 NMRA is triggered, and our review is discretionary, because "there is no right to a further appeal in this Court . . . ." *Shook*, 2023-NMCA-086, ¶ 10 (internal quotation marks and citation omitted). But if the district court exercised its original jurisdiction, "an aggrieved party has a right to appeal to this Court by filing a timely notice of appeal in the district court and a timely docketing statement in this Court." *Id.* (internal quotation marks and citation omitted). The key indicator of appellate jurisdiction over an administrative appeal in the district court "is whether the scope of the administrative agency's statutory authority encompasses the issue raised by the appellant." *Id.* ¶ 14.

{8}     In the present case, the district court exercised original jurisdiction over the Coalition's due process arguments, which include whether (1) the DRB was required to hold a quasi-judicial hearing; and (2) the issue of the councilor's recusal. Although the IDO demands that the City Council comply with the New Mexico Constitution, to invoke the district court's appellate jurisdiction, the agency's authority must "include[] the authority for the administrative agency to evaluate the constitutionality of the process that the administrative agency is itself providing or has provided." *See id.* ¶ 16; *see also id.* ¶ 15 (determining that a statute "simply requir[ing] the [administrative agency] to hold a public hearing, provide interested parties an opportunity to be heard, and give interested parties particular notice," was not enough to authorize the agency to review due process claims). Contrary to the City's argument, the IDO does not explicitly

mandate or permit the City Council "to evaluate the constitutionality of its own actions." *See id.* ¶ 18; § 14-16-6-4(N)(4)(b), (V)(4). Because the City Council was not granted the authority to review the Coalition's due process arguments, the district court acted in its original jurisdiction in addressing those arguments.[3]

**{9}** To decide the remaining issues, the district court exercised its appellate jurisdiction. The IDO explicitly authorized the City Council to review and evaluate the Coalition's arguments regarding the DRB's decision to approve the site plan and site plan amendment applications and the scope of the DRB's authority. *See* § 14-16-6-4(V)(4) (outlining the "criteria for review of an appeal"). The City contends that because the Coalition did not file a petition for certiorari under Rule 12-505(D), we should decline to review the issues decided under the district court's appellate jurisdiction. This Court, however, may generally construe a docketing statement, filed within the timeframes required under Rule 12-505, as a nonconforming petition for certiorari. *See Wakeland v. N.M. Dep't of Workforce Sols.*, 2012-NMCA-021, ¶¶ 17-18, 274 P.3d 766. The Coalition's docketing statement was timely, *see* Rule 12-505(C), and "substantially complie[d]" with the requirements of Rule 12-505(D). *See Wakeland*, 2012-NMCA-021, ¶ 16 (construing a docketing statement "liberally" for the purposes of this analysis). As a result, these issues implicated the district court's appellate jurisdiction and are properly before us under Rule 12-505. We therefore exercise our discretion to review the issues under Rule 12-505(D)(2)(ii) (allowing for review when a final decision is in conflict with an ordinance).

**{10}** The Coalition argues that the district court did not have appellate jurisdiction because the City's decision to approve the site plan and site plan amendment was not final. *See* NMSA 1978, § 39-3-1.1(D) (1999) (providing for the district court's jurisdiction over final decisions). Specifically, the Coalition points to the pending final plat decision and the hearing officer's second recommendation and argues that the City's decisions were not final because the substantive issues the Coalition raised on appeal in the district court were "factually and legally entwined" with the ongoing final plat proceeding. The City agrees that because the approval for the preliminary plat was not final, the district court did not have appellate jurisdiction over the Coalition's appeal.

**{11}** The determination of whether an administrative decision was final is made according to the law regarding the finality of decisions by the district courts. Section 39-3-1.1(D). In that context, a decision is generally final if "all issues of law and fact have been determined." *Kelly Inn No. 102, Inc. v. Kapnison*, 1992-NMSC-005, ¶ 14, 113 N.M. 231, 824 P.2d 1033 (internal quotation marks and citation omitted). As a result, our inquiry is whether all issues of law and fact had been determined as to the site plan and site plan amendment applications. No party has pointed to any portion of the IDO or any

---

3The City also contends that because the Coalition did not file a declaratory judgment complaint, the district court's original jurisdiction was not "specifically" invoked, but offers no authority that this procedure is required. *Cf. Maso v. N.M. Tax'n & Revenue Dep't*, 2004-NMCA-025, ¶ 17, 135 N.M. 152, 85 P.3d 276 (encouraging appellants in driver's license revocations to file only an appeal of the administrative action, as opposed to an appeal and a petition for a writ to address original jurisdiction matters, "[i]n the interest of judicial economy and to avoid a multiplicity of lawsuits").

other law that explains how a site plan and a preliminary or final plat relate to each other. Nor has any party explained how the second hearing officer's recommendation to reject the final plat impacts the already-approved site plan and site plan amendment applications.[4] Absent some explanation from the parties about how the site plan and site plan amendments interact with the plat decisions, we decline to accept the City's invitation to determine, "as a practical matter," *see* § 39-3-1.1(H)(2), that the City's approvals of the site plan and site plan amendments were nonfinal decisions—particularly in light of the IDO's provision that all decisions on applications, except the preliminary plat, are final and appealable. *See* Alb. IDO ch. 14, § 14-16-6-4(U)(1); *cf. Citizen Action N.M. v. N.M. Env't Dep't*, 2015-NMCA-058, ¶ 17, 350 P.3d 1178 (noting that the "final administrative action" was not defined in the statute governing appeals from the particular administrative action, and "[t]herefore, . . . determin[ing] finality based on pragmatic consideration of the matters at issue and analysis of whether the administrative body has in fact finally resolved the issues" (internal quotation marks and citation omitted)). The City approved the site plan and site plan amendment applications and on this record, completely determined all issues of law and fact as to those applications. The decision was therefore final and appealable.

**{12}**     The City argues that the district court's decision and this appeal are nevertheless moot as a result of the second hearing officer's recommendation. "As a general matter a case is moot when no actual controversy exists and the court cannot grant relief to the parties." *McAneny v. Catechis*, 2023-NMCA-055, ¶ 24, 534 P.3d 1007. The City argues that because Applicant withdrew the final plat application after the second hearing officer recommendation, the preliminary plat approval has expired, which in turn has eliminated the actual controversy and eliminated the available relief on appeal. The Coalition maintains that the withdrawal had no such effect because Applicant received an extension for the preliminary plat approval. We agree with the Coalition that the issues are not moot. The hearing officer does not make final decisions, but instead makes recommendations to the City Council to either "affirm, reverse, or otherwise modify the lower decision to bring it into compliance with the standards and criteria of this IDO, applicable City regulation, and any prior approvals related to the subject property." Alb. IDO ch. 14, § 14-16-6-4(V)(3)(d)(5). The City Council then makes the final decision by either accepting or rejecting the hearing officer's recommendation. Alb. IDO ch. 14, § 14-16-6-4(V)(3)(e). According to the hearing officer's second recommendation, the final plat was approved, and our record does not show that the City Council made a final decision to accept or reject the second hearing officer recommendation to reverse the approval. The parties have attempted to represent to this Court what has happened since the second hearing officer decision, but such matters are outside the record on appeal and no party requests, or establishes a basis for, judicial notice. *See State v. Garcia*, 2023-NMCA-010, ¶¶ 25-26, 523 P.3d 650 (describing the process for judicial notice on appeal of other proceedings). As a result, despite the various actions that the parties have taken since the district court's decision,

---

4The City focuses on the interconnectedness of the final plat and the preliminary plat and argues that the withdrawal of the final plat necessarily impacts the approval of the preliminary plat. This is undoubtedly so, but the preliminary plat was never final and is not before us. Therefore, we decline to review it.

our record does not support the City's assertion that subsequent actions have mooted the present appeal.

## II.    The Decision to Approve the Applications

**{13}**    The Coalition argues that the City's decision to approve the site plan and site plan amendment applications must be reversed because (1) the decision is not supported by the evidence, is contrary to law, and is arbitrary and capricious; and (2) the process the City used to approve the applications violated due process protections. We employ the same standard of review as the district court, which "may reverse an administrative decision only if it determines that the administrative entity . . . acted fraudulently, arbitrarily, or capriciously; if the decision was not supported by substantial evidence in the whole record; or if the [c]ity did not act in accordance with the law." *Gallup Westside Dev., LLC v. City of Gallup*, 2004-NMCA-010, ¶ 10, 135 N.M. 30, 84 P.3d 78. As we explain, (1) we determine that substantial evidence did not support part of the City's decision; and (2) based on that determination, we need not address the Coalition's due process arguments. Because we reverse the City's decision, we do not consider the Coalition's additional argument that after the second hearing officer's recommendation, the district court should have either reconsidered its disposition of the Coalition's appeal or remanded the application to the City to reconsider.

## A.    The City's Decision and the District Court's Affirmance

**{14}**    The Coalition argues that the DRB and City Council's decision to approve the amended and new site plans was not supported by substantial evidence. The arguments relate to the requirements set forth in the IDO for reviewing applications under a variety of circumstances, including two categories of site plans. *See* Alb. IDO ch. 14, § 14-16-6-1 (referring to Site Plan—DRB and Site Plan—EPC). In the present case, Applicant checked "Site Plan-DRB" on the application and that is the review that occurred. At the time of the applications, for a Site Plan-DRB, the DRB made the approval decision based on the application's technical compliance with the IDO, after a public meeting, and after that decision, a quasi-judicial hearing occurred only if an appeal was taken to the City Council. *See id.*; Alb. IDO ch. 14, § 14-16-6-6(I)(3). The Coalition argues in part that the location of the proposed development implicated different procedures and requirements.

**{15}**    The Coalition's arguments specifically relate to whether the lot was adjacent to the La Cuentista Major Public Open Space (MPOS) and whether the lot was within the Northwest Mesa Escarpment View Protection Overlay Zone (VPO-2). At the time of the applications, in relevant part, Alb. IDO ch. 14, Section 14-16-5-2(J)(2)(b)(9) required, that for lots greater than five acres and were adjacent to an MPOS, that applicants submit a "Site Plan-EPC," which was subject to additional requirements. For a Site Plan-EPC, the EPC was required to review the application for technical compliance as well as more broadly for consistency with the Albuquerque and Bernalillo County Comprehensive Plan, and the decision was made after a quasi-judicial hearing. *See* Alb. IDO ch. 14, §§ 14-16-6-1; 14-16-6-6(J)(3). Different requirements also applied to

the area designated as VPO-2, including standards for building and structure height, colors, reflectivity, and roof-mounted equipment. *See* Alb. IDO ch. 14, § 14-16-3-6(E).[5] The Coalition contends that the proposed development was adjacent to the MPOS and within the VPO-2 area with greater height restrictions, Applicant did not satisfy the additional requirements, and therefore substantial evidence did not support the City's decision to approve the site plan and site plan amendment applications.

**{16}** The City and Applicant argue that the Coalition did not preserve these arguments in the DRB, before the hearing officer, or in the City Council. We agree that these arguments were not presented in the administrative process, though the matter of adjacency was apparently considered by the DRB. Nevertheless, we may review substantial evidence arguments that were not raised before the administrative body but were raised in the district court and in this Court. *See 2727 San Pedro LLC v. Bernalillo Cnty. Assessor*, 2017-NMCA-008, ¶ 13, 389 P.3d 287 (determining that a prior version of Rule 12-321 NMRA "is limited in the context of administrative hearings" when the question on appeal is substantial evidence); *see also Dick v. City of Portales*, 1994-NMSC-092, ¶ 5, 118 N.M. 541, 883 P.2d 127 (holding that substantial evidence arguments "may be reviewed despite appellant's failure to formally preserve error at" a quasi-judicial administrative hearing (emphasis omitted)). Therefore, we consider the evidence supporting the City's decision to approve the site plan and site plan amendment, first with respect to adjacency and second, regarding the VPO-2.

**{17}** The evidence showed that the proposed development site was adjacent to the MPOS. The IDO defines "adjacent" properties as those "that are abutting or separated only by a street, alley, trail, or utility easement, whether public or private." Alb. IDO ch. 14, § 14-16-7-1. The parties do not dispute that in July 2022, the City changed the zoning for the MPOS and expanded the boundary for the area (shown below left, Updated map) or that the DRB considered an outdated map in its evaluation of Applicant's September 2022 applications (shown below right, Outdated map).

---

5The Coalition's recusal argument relates to a City councilor's efforts to amend this provision. We reiterate that we rely on the version of the Ordinance, Alb. IDO ch. 14, § 14-16-3-6(E), that was in effect at the time of the applications, which does not include the amended language that was the subject of the recusal dispute.



| (the Updated map) | (the Outdated map) |

The Updated map shows the "Subject site" in brown in the upper left corner and the MPOS designation in green in the lower right corner. In the Outdated map, the site is marked by the word "SITE" and a blue rectangle, and the MPOS area is *inside* the red lines that show arrows pointing outward. The City contends that the DRB knew about the zoning change, considered the correct boundaries, and nevertheless concluded that because the property was "located diagonally" from the MPOS, it was not "adjacent." The IDO, however, requires that to be adjacent, the properties abut or be separated by a street. *Id.* The Updated map shows that the proposed development property and the MPOS were separated by a street and not an intersection. *See Elephant Butte Irrigation Dist. v. N.M. Water Quality Control Comm'n*, 2022-NMCA-045, ¶ 15, 516 P.3d 231 ("Substantial evidence requires that there is evidence that is credible in light of the whole record and that is sufficient for a reasonable mind to accept as adequate to support the conclusion reached by the agency." (internal quotation marks and citation omitted)). Accordingly, we reverse and remand, because the properties were adjacent, and the corresponding requirements and processes applied to the site plan and site plan amendment applications.

**{18}** We reach the opposite conclusion and affirm with respect to the height restrictions in the VPO-2 area. The Coalition contends that the VPO-2 map included in Alb. IDO ch. 14, Section 14-16-3-6(E) suggests that "the VPO-2 boundary may cross the [a]pplication [s]ite's boundary," Applicant provided no documentation to show that the development was not in the VPO-2 area, and the DRB did not "determine on the record that the [a]pplication [s]ite was or was not within . . . VPO-2 height limitations." The IDO sets out the VPO-2 area in the map below on the left (the IDO map) and the parties point us to a second map (the Orientation map) in order to orient the site plan within the VPO-2 designation—the site outlined in bold on the Orientation map aligns with the arrow that we have inserted on the IDO map.




| (the IDO Map) | (the Orientation map) |

*See* Alb. IDO ch. 14, § 14-16-3-6(E)(1) (the IDO map). According to the IDO map, the hash-marked area represents the "Height Restrictions Sub-area." While many of the standards in Alb. IDO ch. 14, § 14-16-3-6(E) applied to the entire VPO-2 mapped area (the dotted area on the IDO map), the building and structure height standards applied only to a the "Height Restrictions Sub-area." *See* Alb. IDO ch. 14, § 14-16-3-6(E)(3). Based on these maps, we conclude that substantial evidence supports a determination that the proposed development site was not within the VPO-2 "Height Restrictions Sub-area" and the additional building and structure height standards therefore did not apply. *See Elephant Butte Irrigation Dist.*, 2022-NMCA-045, ¶ 15 (explaining that substantial evidence, "is evidence demonstrating the reasonableness of an agency's decision, and we neither reweigh the evidence nor replace the fact-finder's conclusion with our own" (alteration, internal quotation marks, and citation omitted)); *see also Montano v. N.M. Real Est. Appraiser's Bd.*, 2009-NMCA-009, ¶ 8, 145 N.M. 494, 200 P.3d 544 ("We will not disturb the agency's factual findings if supported by substantial evidence.").

**{19}**    For these reasons, we affirm in part and reverse in part the City's approval of the site plan and site plan amendment applications.

**B.    Due Process: Quasi-judicial Hearing and Recusal**

**{20}**    The Coalition also argues that the City violated due process protections because (1) a quasi-judicial hearing was required in the first instance—at the DRB stage; and (2) the City should have held a hearing about whether a City councilor should have recused from the application decisions. As to the first argument, the IDO has been amended since the first approval process and the DRB no longer plays a role in the approval process for site plans and the initial decision in the EPC appears to be made after a quasi-judicial hearing. *See* Alb. IDO ch. 14, §14-16-6-1 (April 2025). Because we are remanding for new site plan and site plan amendment evaluations, and the proceedings will take place under the current IDO, we decline to address the prior procedures. *See*

Alb. IDO ch. 14, §§ 14-16-1-4(A)(1) (April 2025); 14-16-1-10(A)(3) (April 2025). Similarly, because the Coalition's argument on appeal is that the City Council should have held a hearing on the recusal request and we are remanding for new proceedings, we decline to address the procedure employed by the City relating to those specific circumstances.

**CONCLUSION**

**{21}** We affirm in part and reverse in part the City's approval of the amended site plan and new site plan applications.

**{22}  IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**SHAMMARA H. HENDERSON, Judge**